USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit

No. 98-1194

 STRATFORD SCHOOL DISTRICT, S.A.U. #58,

 Plaintiff, Appellee,

 v.

 EMPLOYERS REINSURANCE CORPORATION,

 Defendant, Appellant.

 APPEAL FROM THE UNITED STATES DISTRICT COURT 

 FOR THE DISTRICT OF NEW HAMPSHIRE

 [Hon. Paul J. Barbadoro, U.S. District Judge]

 Before

 Coffin and Campbell, Senior Circuit Judges,
 
and Gertner, U.S. District Judge.

 

 Charles W. Grau, with whom Upton, Sanders & Smith was on brief
for appellant.
 Bruce W. Felmly, with whom Jeanmarie Papelian and McLane,
Graf, Raulerson & Middleton were on brief for appellee.

December 17, 1998

 
 
 CAMPBELL, Senior Circuit Judge. Employers Reinsurance
Corporation ("Employers") appeals from the district court's grant
of attorneys' fees and costs against Employers in favor of its
insured, Stratford School District ("Stratford"). Stratford
incurred these fees and costs in the course of its successful
prosecution of a declaratory judgment action against Employers and
several other insurance companies. The issue before us is whether
Employers' insurance contract required it to reimburse Stratford
for them. Employers was contractually bound to pay the fees and
costs only if Stratford had no "other insurance," and it is
Employers' contention that Stratford had, in fact, two other
sources of insurance. The district court ruled that neither source
of funds available to Stratford was "insurance" within the meaning
of Employers' contract. We remand for additional findings.

 I. BACKGROUND
 In January, 1994, a high school student and her father
sued Stratford in the New Hampshire state court ("the underlying
action"), claiming that Stratford was liable for sexual misconduct
against the student by one of Stratford's teachers. Stratford gave
notice of the suit to its five insurers, Employers,
Coregis/International Insurance Company ("Coregis"), National Union
Insurance Company ("National Union"), New Hampshire Indemnity
Company ("New Hampshire Indemnity"), and Reliance Insurance Company
("Reliance"). Each of the insurers denied coverage. 
 On September 2, 1994, Stratford sued the insurers in New
Hampshire state court ("the declaratory judgment action"), seeking
a declaration that they were obligated to defend and indemnify
Stratford in the underlying action. The insurers removed the suit
to federal district court. The district court subsequently granted
summary judgment in favor of National Union, New Hampshire
Indemnity, and Reliance. Then, in June, 1995, Stratford and
Coregis entered a stipulation that effectively settled Stratford's
claim against Coregis. Under the stipulation, Coregis agreed to
provide a defense and coverage, subject to a so-called $75,000
"self-insured retention" in Stratford's Coregis policy. 
 Stratford had received its insurance policy with Coregis
through its membership in the New Hampshire School Boards Insurance
Trust ("the Insurance Trust"). The Insurance Trust is a compendium
of participating school districts from across the state that
participate as members, and the Insurance Trust purchases insurance
for them and otherwise tends to their insurance needs. After
Stratford and Coregis entered their stipulation, the Insurance
Trust amended the terms of its obligations to Stratford via an
"Endorsement." The Endorsement stated:
 THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT
 CAREFULLY. It is understood and agreed that the $75,000
 Property deductible for [Stratford] under [the Coregis
 policy] is reduced to $1000, and that the New Hampshire
 School Boards Insurance Trust will pay any covered claim
 of less than $75,000 and greater than $1000 for
 [Stratford].
 
 Coregis' stipulation with Stratford left Employers as the
sole remaining defendant in Stratford's declaratory judgment suit. 
On May 3, 1996, the district court granted summary judgment in
favor of Stratford and against Employers. As the prevailing party,
Stratford then moved for the award of its attorneys' fees and costs
against Employers. Stratford sought the fees and costs it had
incurred both in the underlying action and in the declaratory
judgment action. Employers lodged numerous objections to the
motion (most of which are not relevant to this appeal), and the
district court appointed a special master to hear evidence and
issue a report and recommendation. 
 On December 8, 1997, the special master ultimately
recommended that Stratford was entitled overall to $111,973.51 in
attorneys' fees for the underlying case, $41,560.13 in attorneys'
fees for the declaratory judgment action, and $9,000 in attorneys'
fees for preparing the motion. The special master further
recommended that, pursuant to Coregis' stipulation, both Coregis
and Employers were partially responsible for these payments. The
special master concluded that Employers was obligated to pay
$101,880.65 for the underlying case, $37,638.63 for the declaratory 
judgment action, and $9,000 for the motion.
 On January 21, 1998, the district court adopted the
special master's report and recommendation in its entirety. 
Employers appeals, objecting only to the district court's ruling
regarding fees for the declaratory judgment action. The sole issue
in this appeal is whether the district court correctly interpreted
a provision in the contract between Stratford and Employers as
requiring Employers to pay for a portion of Stratford's attorneys'
fees in the declaratory judgment action. That provision, Section
V of Employer's insurance contract, provides:
 OTHER INSURANCE. If, but for the insurance afforded by
 this policy, the insured would have other insurance
 against a loss otherwise covered hereby, the insurance
 afforded by this policy shall be excess over such other
 insurance.
 
 The crux of Employers' argument is that Section V
absolves it from paying Stratford's attorneys' fees because
Stratford had two types of "other insurance" the stipulation with
Coregis and the Endorsement from the Insurance Trust. The district
court disagreed, adopting in its entirety the report and
recommendation of the special master, who had concluded that
neither the Coregis policy to the extent of the $75,000 retention,
nor the Insurance Trust's Endorsement paying most of that
retention, constituted "other insurance." 

 II. DISCUSSION
 A. Coregis' Self-Insurance Policy
 Employers argues that Stratford's $75,000 self-insurance
retention, for which Coregis assumed no liability, was nevertheless
a species of "other insurance". Stratford makes the rejoinder that
its retention of responsibility to pay for claims against it below
the limit of $75,000 was no "insurance" at all. It seems obvious
that Stratford wins this argument.
 New Hampshire law governs this diversity action. The New
Hampshire courts have not addressed whether retained self-insurance
under a deductible, or in some analogous situation, constitutes
"insurance" for the purposes of a separate policy's "other
insurance" clause. We must predict, therefore, how the Supreme
Court of New Hampshire would resolve this issue, relying on
guidance from analogous decisions in other states and other legal
authorities. See Moores v. Greenberg, 834 F.2d 1105, 1107 (1st Cir.
1987). 
 Black's Law Dictionary 802 (6th ed. 1990) defines
"insurance" as 
 [a] contract whereby, for a stipulated consideration, one
 party undertakes to compensate the other for loss on a
 specified subject by specified perils. The party
 agreeing to make the compensation is usually called the
 "insurer" or "underwriter;" the other, the "insured" or
 "assured;" the agreed consideration, the "premium;" the
 written contract, a "policy;" the events insured against,
 "risks" or "perils;" and the subject, right, or interest
 to be protected, the "insurable interest."
 
 In contrast, Black's Law Dictionary defines "self insurance" as a
"[p]lan in which the insured (e.g., business) places aside in a
fund sufficient sums to cover liability losses that may be
sustained. Commonly, under such plan the business will self-insure
itself up to a certain amount and then carry regular liability
insurance to cover any excesses." Id. at 806.
 The difference between these two concepts -- "insurance"
and "self-insurance" -- is self-evident. "[T]he plain and ordinary
meaning of the term 'insurance' contemplates a written contract 
an insurance policy issued by one individual or entity to
compensate another for loss in exchange for a premium. . . .
[U]nder a self-insurance scheme, no written insurance policy is
issued by another individual or entity nor is a premium paid
because obviously a business which is self-insured does not need to
pay itself to protect against its own risk of loss." Wake County
Hosp. System, Inc. v. National Casualty Co., 804 F. Supp. 768, 775
(E.D. N.C. 1992), aff'd, 996 F.2d 1213 (4th Cir. 1993). This view
has been adopted by a clear majority of courts confronted with the
question. See id. at 774 (collecting cases from New York, Texas,
Missouri, Indiana, California, Iowa, Arizona, Florida,
Pennsylvania, Alaska, and Ohio). The distinction applies equally
within one insuring agreement, the terms of which provide insurance
coverage only above a stated amount, therefore requiring the
insurer to self-insure, or look to other sources, for the lesser
sum. Here, to be sure, Stratford did not literally pay from its
own pocket, being covered in large measure by the Insurance Trust
under its Endorsement, see infra, but its insurer, Coregis, lacked
any responsibility within the $75,000 limits, and, as discussed
below, the Insurance Trust's contribution appears not to have been
insurance either.
 We hold that Stratford's $75,000 so-called self-insured
retention under its agreement with Coregis was not "other
insurance" within the context of its policy with Employers. 
 B. The Insurance Trust's Endorsement
 Employers contends that the Insurance Trust's agreed
payment of all except $1,000 of the $75,000 Coregis deductible
under the Insurance Trust's Endorsement constituted "other
insurance." This presents a knottier question than the previous
one. 
 We begin by assuming for purposes of this section of the
opinion, against Employers' objection, that the Insurance Trust was
at all relevant times a pooled risk management program ("PRMP")
established under N.H. Rev. Stat. Ann. 5-B:5. The special master
found that the Insurance Trust was a PRMP and the district court
adopted his report. We shall return to Employers' objection to
this characterization in the concluding section of this opinion,
see infra; but assuming, arguendo, as determined below, that the
Insurance Trust was a PRMP, we hold that the financial assistance
it furnished Stratford in paying claims within the $75,000 Coregis
deductible was not "other insurance." 
 New Hampshire law specifically declares that PRMPs are
not insurers. N.H. R.S.A. 5-B:6(I) states:
 Any pooled risk management program meeting the standards
 required under this chapter is not an insurance company,
 reciprocal insurer, or insurer under the laws of this
 state, and administration of any activities of the plan
 shall not constitute doing an insurance business for
 purposes of regulation or taxation.
 
 The New Hampshire courts have not considered whether, given the
above statutory exception, the benefits paid by a PRMP should
nonetheless be considered as "insurance" for the purposes of an
insurer's "other insurance" clause. We think it likely that were
the Supreme Court of New Hampshire presented with the question, it
would answer in the negative.
 Employers claims that the limiting language, "for
purposes of regulation or taxation," implies that the legislature
intended PRMPs to be treated as insurers for all purposes except"regulation or taxation." However, while presumably the New
Hampshire statutory law on PRMPs would not prohibit private parties
from expressly contracting to treat pooled risk agreements as a
form of "other insurance," it certainly suggests that the products
of PRMPs are outside of the ordinary meaning of the undefined term
"insurance" in New Hampshire. The first clause of the statute
declares without qualification that a PRMP is not an insurance
company nor an insurer under the laws of the state, while the
second clause says that the administration of any activities of a
PRMP shall not constitute doing an insurance business for state
regulation and tax purposes. As the statute places PRMPs beyond
the ken of state insurance, it behooves insurers and others who
wish nonetheless to include PRMPs and their products under the term
"insurance" to so provide by apt language. 
 Employers seeks to minimize the significance of the
statute by contending that the term "regulation" refers only to
promulgated administrative regulations. The ordinary meaning of
"regulation," however, is "a rule or order prescribed for
management or government." See Black's Law Dictionary at 1286.
That the legislature intended this more expansive definition of
"regulation" is clear from the statute's preamble. There, the
legislature stated its findings that 

 insurance and risk management is essential to the proper
 functioning of political subdivisions; that risk
 management can best be achieved through purchase of
 traditional insurance or by participation in pooled risk
 management programs established for the benefit of
 political subdivisions; . . . that the resources of
 political subdivisions are presently burdened by the
 securing of insurance protection through standard
 carriers; and that pooled risk management programs which
 meet the standards established by this chapter should not
 be subject to insurance regulation and taxation by the
 state.
 
N.H. R.S.A. 5-B:1. This section indicates that the legislature
sought to facilitate risk protection coverage for political
subdivisions by granting PRMPs special status, and treating them
differently from providers of traditional insurance. 
 Employers nonetheless urges that the benefits provided by
PRMPs operate like insurance, hence should be treated the same. 
PRMPs obviously do have insurance-like qualities. In N.H. R.S.A. 
 5-B:2(IV), the legislature defined "risk management" as 
 the defense of claims and indemnification for losses
 arising out of the ownership, maintenance, and operation
 of real or personal property and the acts or omissions of
 officials, employees, and agents; the provision of loss
 prevention services including, but not limited to,
 inspections of property and the training of personnel;
 and the investigation, evaluation, and settlement of
 claims by and against political subdivisions.
 
 The above functions are often carried on by insurance companies
(though also by self-insurers). But while the program may have
some insurer-like aspects, which is presumably why statutory
exemption from insurance regulation was deemed necessary, the
legislature has expressly removed it from the category of
insurance. By so doing, it abolished any normal expectation in New
Hampshire that the undefined term "insurance" would, without more,
include PRMPs. 
 Had Employers wanted its insurance obligation to be
excess to funds that Stratford might receive from a third party
such as the Insurance Trust's pooled arrangement, Employers could
and should have so specified in the policy rather than relying on
the term "insurance." See Trombly v. Blue Cross/Blue Shield of New
Hampshire/Vermont, 423 A.2d 980 (N.H. 1980) (holding that
ambiguities in insurance contracts are construed against the
drafter); see also RCI Northeast Serv. Division v. Boston Edison
Co., 822 F.2d 199, 205 (1st Cir. 1987)("In the arena of commerce,
it avails us little to stand language on its ear in an effort to
rescue a firm from a sinkhole of its own design. It is no
appropriate part of judicial business to rewrite contracts freely
entered into between sophisticated business entities.").
 Assuming, therefore, that the Insurance Trust was a PRMP,
we hold that -- as the Insurance Trust's Endorsement did not
constitute "insurance" as that term is usually understood under New
Hampshire law -- it was not "other insurance" under Stratford's
contract with Employers.
 C. Whether the Insurance Trust was a PRMP
 Employers argues that the record before the special
master, whose report and findings were confirmed by the district
court, does not support the master's finding that the Insurance
Trust was a PRMP within the meaning of N.H. Rev. Stat. Ann. 5-
B:5. Stratford first raised the defense of the Insurance Trust's 
PRMP status in its supplemental brief filed after the special
master's hearing. Previously, Stratford had simply argued in more
general terms that the Insurance Trust's Endorsement was not "other
insurance." As soon as Stratford raised in its post-hearing brief
the issue of PRMP status, Employers objected in its own brief on
the ground that Stratford had not tendered any evidence to confirm
that the Insurance Trust was, in fact, a PRMP. Notwithstanding
this objection, the special master determined in his report that
"New Hampshire School Board's [sic] Insurance Trust is a pooled
risk management program organized under N.H. Rev. Stat. Ann. 5-B
(1988)." Employers presented a similar objection to the district
court, which nonetheless confirmed the special master's report
without comment on the point.
 Our review of the record supports Employers' contention
that there is insufficient record support from which to find that
the Insurance Trust is a PRMP. About all that appears on this
score is the parties' apparent acceptance that the Insurance Trust
was some kind of entity comprised of participating school districts
(Stratford being one) formed for the purpose of acquiring and
managing insurance for its member districts. While this suggests
PRMP status, it falls short of establishing it. Neither Stratford
nor anyone else put into evidence the Insurance Trust's charter,
by-laws, and any other necessary papers from which it could be
determined that the Insurance Trust met the legal requirements of
a PRMP as these are set out in the New Hampshire statute granting
such entities exemption from insurer status. See N.H. Rev. Stat.
Ann. 5-B:5. Specifically, nothing showed, as the statute
requires, that the Insurance Trust (1) is organized under New
Hampshire law; (2) is governed by a board of elected or appointed
public officials; (3) returns all earnings and surpluses; (4)
prepares and files an annual audit; (5) is governed by written by-
laws; and (6) prepares an annual actuarial evaluation. See id. 
Nor was alternative evidence of PRMP status tendered, for example,
that some state official qualified to do so had certified that the
Insurance Trust was a PRMP. And, contrary to Stratford's present
contention, Employers never waived its present objection on this
score. Rather, as soon as Stratford raised the argument that the
Insurance Trust was a PRMP, hence could not be an insurer,
Employers objected that the record did not support a finding of
PRMP status. 
 On the other hand, common sense, buoyed by the little we
can glean from the record, suggests that the Insurance Trust is
probably a PRMP. Employers, indeed, has never claimed that the
Insurance Trust is not a PRMP but simply says that Stratford failed
to meet its burden of presenting sufficient formal proof for the
special master and the district court to find that it is. The
special master and the district court may have concluded that the
Insurance Trust's status was self-evident and that Stratford, a
school district member of the Insurance Trust, would surely know
whether the Insurance Trust was a PRMP, and let matters go at that. 
Still, while Employers' insistence on proof may seem technical, it
was Stratford's responsibility to have offered evidence sufficient
to establish PRMP status if it wished to assert such status over
Employers' objection, as a reason the Endorsement could not be
insurance. While the general sense we get from the record is that
PRMP status was assumed as never being seriously in doubt, the
district court erred in overlooking the absence of formal proof
when it confirmed the special master's finding of PRMP status over
Employers' specific objection on this score. 
 We think, however, that to reverse on the basis of this
deficiency would be to elevate form over substance, given the
murkiness of the situation after the special master's hearing and
the ease with which the deficiency in proof can even now be
corrected. We accordingly remand rather than reverse. 
 We vacate the judgment below and remand to the district
court with instructions to reopen the record to the extent
necessary to determine if the Insurance Trust was at relevant times
a New Hampshire PRMP. If the district court finds, on the basis of
suitable proof, that the Insurance Trust was a New Hampshire PRMP,
the court is instructed to enter judgment for Stratford consistent
with this opinion. If, however, adequate evidence that the
Insurance Trust is a New Hampshire PRMP is not produced, causing
the district court to find that Stratford has not met its burden in
this regard, the court will need to reconsider the nature of the
Insurance Trust's Endorsement and determine anew whether or not it
constitutes 'other insurance' under Stratford's contract with
Employers. In such circumstances, it may conduct such future
proceedings, and make such further findings and rulings and
judgment in the cause, as it deems appropriate.
 So ordered. Each party to assume its own costs.